[Cite as *State v. Wilson*, 2018-Ohio-154.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

JEREMY DAVID WILSON

      Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Earle E. Wise, Jr., J.

Case No. 2017CA00052

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2016CR2121 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 16, 2018 |
| APPEARANCES: | |

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney,
Stark County, Ohio

BY: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio 44702

For Defendant-Appellant

DONOVAN HILL
116 Cleveland Ave. North
Canton, Ohio 44702

*Hoffman, J.*

{¶1}    Defendant-appellant Jeremy Wilson appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of sexual battery, in violation of R.C. 2907.03(A)(5), a felony of the second degree, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}    On November 17, 2016, the Stark County Grand Jury secretly indicted Appellant on the aforementioned charge.  The charge arose out of numerous incidents involving Appellant's biological daughter, who was less than thirteen years of age, and taking place between October 23, 2005, and December 31, 2013.  Appellant appeared for arraignment on December 2, 2016, and entered a plea of not guilty to the charge.

{¶3}    The trial court conducted an Arnold hearing on January 27, 2017.  Megan Dahlheimer, a pediatric nurse practitioner, and Carrie Schnirring, a psychology assistant, testified to the statements made by the victim during their examination and treatment.  The trial court ruled limited statements made in the course of treatment and diagnosis would be allowed during the jury trial.

{¶4}    The trial court conducted a hearing on March 2, 2017.  Following the hearing, Appellant withdrew his motion to allow the jury to hear evidence of a prior allegation after the victim testified to the nature of that prior allegation.

{¶5}    The matter proceeded to trial on March 6, 2017.  The following evidence was adduced at trial.

{¶6}    The victim testified, when she was approximately three years old, the family was residing in a trailer in Waynesburg, Ohio.  Appellant took her into the bedroom he shared with the victim's mother and proceeded to touch her vaginal area with his fingers.  The victim recalled the family moved to her aunt's house in Canton when she was in the third grade.  Appellant engaged

in sexual contact with the victim while the family resided in Canton.  Appellant continued to abuse the victim until she was 11 or 11 ½ years old.

{¶7}     The sexual contact usually involved Appellant sticking his finger into the victim's vagina.  When she was small, Appellant would insert one finger into her vagina, but as she advanced in age, he would use two fingers.  Appellant would sometimes lick her vagina.

{¶8}     When the victim was nine or ten years old, Appellant took her on an out-of-state trip in the semi-truck he drove.  While it was still light outside, Appellant had the victim take a nap with him in a bed placed in the back of the truck, and proceeded to have sexual contact with her vagina.

{¶9}     When the victim was approximately 11 ½ years old, the family was living in Paris, Ohio.  The victim had started her menstrual cycle that year.  One day, the victim was upset and crying because her mother would not let her visit a friend.  Her mother told her to go into the bedroom and take a nap with Appellant.  Appellant allowed her to play with his cell phone.  Appellant instructed her to pull down her pants, and she complied.  Appellant then licked her vagina.  He also pulled up her sports bra and licked her breasts.  Appellant asked her if it felt good, she replied, "No."

{¶10}     Following a fight with the victim's mother, Appellant left the home for a period of time.  The victim believed she was safe.  She typed, "Mom, dad touched me," in the Note section of the cell phone she received for Christmas.  She handed the phone to her mother to read what she had written.  Her mother promised to take her to the police, but never did.  When Appellant returned home, the victim was upset and scared.  Her mother was happy Appellant had returned.  When he was confronted about the victim's accusations, Appellant denied having done anything.  Appellant stated the victim must have been thinking of someone else.

{¶11}     Although Appellant repeatedly told the victim not to tell anyone, she finally confided in Miss Woody, her dyslexia teacher at Minerva Middle School.  Miss Woody brought her to the

school counselor's office. The school contacted the police and her parents. Her mother asked her why she told.

{¶12} Stark County Department of Job and Family Services ("SCDJFS") became involved in March, 2016. After her mother cancelled appointments at the Children's Network, Pam Spencer, a forensic interviewer with SCDJFS, went to the victim's school to conduct an emergency interview. Thereafter, the victim was removed from the home and placed with relatives. She was subsequently placed in a foster home.

{¶13} On April 14, 2016, the victim, who was then 13 years old, was examined by Megan Dahlheimer, a nurse practitioner at Akron Children's Hospital. The victim reported to Dahlheimer Appellant had "molested" her five or six time beginning when she was 2 or 3 years old, and ending when she was 11 or 11 ½ years old. The victim stated Appellant touched her "privates" with his fingers and his tongue, and she had experienced pain while it was happening and occasional bleeding following the incidents. Dahlheimer completed a physical examination of the victim and reported no abnormal physical findings. Dahlheimer explained she was not surprised by the lack of physical findings given only 3% of the patients she sees who have reported sexual abuse actually show physical trauma. Further, Appellant's physical abuse of the victim stopped approximately two years before it was reported to someone outside the family. Dahlheimer noted the victim provided a clear and detailed disclosure. Dahlheimer concluded the victim had been sexually abused.

{¶14} Carrie Schnirring, a psychology assistant at Northeast Ohio Behavioral Health, conducted a sexual abuse evaluation. Schnirring met with the victim's mother in May, 2016, and began sessions with the victim on June 29, 2016. Schnirring met with her four times. The victim informed Schnirring Appellant had "molested" her. The victim described the sexual acts committed on her by Appellant as well as the places the acts occurred. After interviewing the victim, Schnirring reviewed the notes from the forensic interview and concluded the victim's reporting to her was consistent with the forensic interview. Schnirring found no hidden agenda or

secondary motive for the victim's accusations.  Schnirring noted the victim loved Appellant and did not want him to go to jail, but recognized what he had done to her was very wrong.  Schnirring diagnosed the victim with adjustment disorder with anxiety and depression. When the victim described the events, she closed her eyes and shook her head "as if she was trying to get those memories out of her head." Transcript of Proceedings, Vol. II at 34.  She was able to imitate the sound of Appellant slurping.

{¶15}   After the completion of the forensic interview, Detective Von Spiegel interviewed Appellant.   Appellant denied any sexual contact with the victim.

{¶16}   At the close of the state's case, Appellant moved for acquittal pursuant to Crim. R. 29.  The trial court denied Appellant's motion.  Thereafter, Appellant rested without calling any witnesses on his own behalf.

{¶17}   After hearing all the evidence and deliberating, the jury found Appellant guilty of one count of sexual battery.  Appellant appeared for sentencing on March 15, 2017.  The trial court imposed a period of incarceration of 5 years.  The trial court adjudicated Appellant a Tier III sexual offender.  The trial court memorialized Appellant's conviction and sentence via Judgment Entry filed March 24, 2017.

{¶18}   It is from his conviction and sentence Appellant appeals, raising as his sole assignment of error:


THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST

WEIGHT AND SUFFICIENCY OF THE EVIDENCE.


I

{¶19}   The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–

52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶20} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶21} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

{¶22} Appellant was convicted of one count of sexual battery, in violation of R.C. 2907.03(A)(5), which reads:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

**{¶23}** Appellant asserts the state "failed to present sufficient evidence to meet each and every element of these offenses [sic], and the testimony that was presented was instead contradictory, biased, and crucially so lacking in credibility and cross-corroboration that the State's own witnesses admitted they lacked concrete evidence to support the accusations made by [the victim]." Brief of Appellant at 3. Appellant also argues the allegations made by the victim at trial were contradicted by the testimony of Schnirring and Dahlheimer. We disagree.

**{¶24}** Although there was no physical evidence of abuse, Dahlheimer explained the last incident of sexual abuse occurred several years prior to her examination of the victim, and the lack of physical evidence was not uncommon in sexual abuse victims. The victim's testimony was consistent with the statements she made to both Dahlheimer and Schnirring. The victim described how Appellant touched her vagina, licked her vagina, and inserted his fingers into her vagina. She recalled where she was living at the time of the different incidents as well as in which room of the home the abuse occurred. She remembered the abuse which took place when she accompanied Appellant on an out of state trip in the semi-truck he drove. Schnirring compared the details the victim reported to her with the notes of the forensic examiner, and found the victim was consistent and included idiosyncratic details each time.

**{¶25}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th

Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in the State's evidence which would demonstrate a lack of credibility of the witnesses sufficient to find the jury lost its way to finding Appellant guilty.

**{¶26}** Based upon the foregoing, we find the jury's verdict was supported by sufficient evidence and was not against the manifest weight of the evidence.

**{¶27}** Appellant's sole assignment of error is overruled.

**{¶28}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur